UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

CHRISTOPHER FERNANDEZ,                    :

              Petitioner,       :

      - against -             :

JOSEPH SMITH et ano,                      :

           Respondents.       :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/5/2008

**OPINION**

07 Civ. 6310 (DC)

**APPEARANCES:**   EPSTEIN & WEIL
              Attorneys for Petitioner
                 By: Lloyd Epstein, Esq.
              225 Broadway
              New York, New York  10007

              ROBERT T. JOHNSON, ESQ.
              District Attorney, Bronx County
              Attorney for Respondents
                 By: Christopher Blira-Koessler, Esq.
                    Assistant District Attorney
              198 East 161st Street
              Bronx, New York  10451

**CHIN, District Judge**

      In the early hours of June 30, 2001, petitioner
Christopher Fernandez's cousin was involved in a confrontation
with a group of young men.  Fernandez arrived on the scene in a
car, and the members of the group ran off.  The cousin got into
the vehicle, and Fernandez and his cousin saw one of the young
men, Anthony Santiago, in the street.  They drove after him.  The
cousin jumped out and started attacking him.  Within moments,
Fernandez joined the attack, and he hit Santiago in the head four
or five times with an object, apparently a flashlight.  Santiago
died later that morning as a result of the injuries.

Following a jury trial in the Supreme Court of New York, Bronx County, Fernandez was acquitted on September 23, 2003 of intentional murder, but convicted of depraved indifference murder in violation of New York Penal Law § 125.25(2). He was sentenced to a term of imprisonment of nineteen years to life.

On July 5, 2006, while Fernandez's case was on direct appeal and before his conviction became final, the New York Court of Appeals decided People v. Feingold, 7 N.Y.3d 288 (2006). In Feingold, the court fundamentally altered the definition of "depraved indifference," explicitly overruling its earlier decision in People v. Register, 60 N.Y.2d 270 (1983), cert. denied, 466 U.S. 953 (1984), which for many years was the leading New York case interpreting the depraved indifference murder statute. Under the Feingold definition, Fernandez could not have committed depraved indifference murder as a matter of law, as he acted intentionally -- not indifferently -- when he attacked Santiago. Nonetheless, Fernandez's appeal was rejected on September 28, 2006, when the Court of Appeals denied his application for leave to appeal, some three months after it had decided Feingold.

Fernandez petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contests his conviction on the ground that the evidence introduced at trial was legally insufficient to support the depraved indifference murder conviction in light of Feingold. I agree. For the reasons set forth more fully below, Fernandez's conviction for depraved

-2-

indifference murder cannot stand, and, accordingly, his petition
is granted.

**BACKGROUND**

**A.   The Facts**

      On June 30, 2001, Angel Martinez ("Angel"), Fernandez's
cousin, got into a "commotion in the street" with Anthony
Santiago and several other youths.  (Trial Tr. at 32-33, 298-99).
They threw "fists" at each other.  (Id. at 299).

      Fernandez and another cousin, Carlos Fernandez
("Carlos"), pulled up in their car and saw that Angel was in the
middle of a fight.  (Id. at 32, 299).  Carlos testified that:

> I saw about three or four youths, at least
> they looked like they were swinging, at least
> one of them were swinging at Angel and they
> were in the middle of the street . . . and
> Angel looked like he had been hit.

(Id. at 32).  Carlos testified that Angel's chest was "like red"
and that "he looked like he had scratches on him." (Id.).  Angel
also looked "really scared, really scared." (Id. at 33).

      Fernandez, who was driving, yelled at Angel to get in
the car; Angel did so, and "the kids ran off." (Id. at 33-34).
Angel was "visibly upset." (Id. at 35).  Fernandez, Carlos, and
Angel then saw Santiago on the street, and Fernandez "drove off"
after him.  (Id. at 35).  Santiago threw a plastic soda bottle at
the vehicle.  (Id. at 35-36).  Fernandez slowed the car down, and
Angel jumped out.  (Id. at 40).  Angel caught up to Santiago and
hit him, and Santiago "went down pretty fast." (Id.).  Fernandez
then got out of the car and walked over, initially trying to hold

-3-

Angel back.  (Id. at 42).  Then Fernandez started hitting
Santiago as well, striking him in the head with an object,
apparently a flashlight, four or five times.  (Id. at 42-43, 155-
56, 160).  Fernandez, Angel, and Carlos then got back into the
vehicle and drove off, leaving Santiago lying on the ground in
the middle of the intersection.  (Id. at 45, 156).

     A bystander called the police.  She walked over to
Santiago, who rolled over onto his back, bleeding.  (Id. at 156-
57).  She stood over him, in the intersection, to make sure that
no cars hit him, and waited for the police to come.  (Id. at
157).

     The police arrived on the scene at approximately 3:20
a.m. and found Santiago lying on his back, with an apparent head
wound and cuts and abrasions on his face.  (Id. at 96).  Santiago
appeared to be intoxicated, as his eyes were glassy and he had
the smell of alcohol on his breath.  (Id. at 97).  Emergency
medical services arrived, treated Santiago, and took him to
Lincoln Hospital in the Bronx.  (Id. at 99-100).  When he
arrived, he was alert and oriented (id. at 610-11), but exhibited
signs of intoxication (id. at 612).  He was intoxicated, as his
blood alcohol level exceeded the legal level of intoxication in
New York.  (Id. at 594, 612).  Because the symptoms associated
with intoxication are similar to those associated with Santiago's
head injuries, he may not have received proper treatment.  (Id.
at 578, 609-12).  His condition deteriorated, and he died as a
result of the internal bleeding caused by the blows to his head.

(Id. at 574).  He was pronounced dead at 5:55 a.m. on June 30, 2001.  (Id. at 555).

**B.    Prior Proceedings**

    **1.    The Trial Court**

        **a.    The Indictment**

Fernandez and Angel were indicted in the Supreme Court of the State of New York, Bronx County, on November 16, 2001 for manslaughter in the first and second degrees.  (Blira-Koessler Aff. ¶ 5).  On May 13, 2002, they were further indicted for two counts of murder in the second degree, after additional evidence was presented to a second grand jury.  (Id.).  See N.Y. Penal Law §§ 125.25(1) (intentional murder), 125.25(2) (depraved indifference murder) (McKinney 2008).

        **b.    The Trial**

Trial commenced on September 10, 2003, before Justice Joseph Fisch and a jury.  (Trial Tr. at 1).  In its opening statement, the prosecution declared that "[t]he People will prove to you [that defendants] intended to cause [Santiago's] death and they did cause his death by literally beating the life out of him."  (Id. at 12).  The prosecution described what it expected the evidence to prove:

> [Y]ou will hear that before that car even
> came to a stop, Angel Martinez was out of
> that car and struck Anthony Santiago hard
> enough that that one hit knocked Anthony
> Santiago to the ground, and you will hear he
> never got up again at that intersection. And
> while he was lying on the ground, Angel
> Martinez proceeded to strike him, to kick

-5-

> him, to stomp him, and then Christopher
> Fernandez got out of that vehicle and he took
> it up a notch.  This wasn't just a two on one
> fight.  He decided to use some type of
> instrument.  You will hear that he repeatedly
> struck Anthony Santiago in the head with a
> billy club, a flashlight, a bat, some type of
> dark, cylindrical instrument, and he hit him
> in the head again and again . . . .

(Id. at 15).  The prosecution concluded its opening statement by

asserting that the jury could reach "only one conclusion based on

[the] evidence and that is that [defendants] intended the natural

consequences of their actions and their actions took the life of

a young man."  (Id. at 16).  The prosecution made no mention of

the depraved indifference charge and made no effort to argue

facts to support the alternative theory or to even suggest that

there was an alternative basis -- depraved indifference -- for

the jury to consider.  (See id. at 12-16).

        Immediately after the opening statements, Fernandez's

counsel stated that he wanted to make an application.  Before he

could explain, however, the court cut him off, saying:  "Later.

Sit down."  (Id. at 24).  After the first witness was sworn in,

the court permitted counsel to approach for an off-the-record

sidebar conference.  (Id. at 25).

        At the lunch break, outside of the presence of the

jury, the court permitted Fernandez's counsel to make his

application.  Counsel moved to dismiss the depraved indifference

murder count, contending that the prosecution had failed to

address the depraved indifference count in its opening statement.

(Id. at 84-85).  The court denied the motion.  (Id. at 85).

The trial proceeded. The prosecution rested on September 18, 2003. (Id. at 547, 627). The defense noted, without objection from the prosecution and with the court's acquiescence, that it was "deferring motions to a further time." (Id. at 627). The defense rested after a brief defense case. (Id. at 659).

After dismissing the jurors for the day, the court announced: "We'll have our pre-summation conference inside and then we'll go back on the record." (Id. at 661). The transcript shows that the court then took a recess. (Id.). The transcript indicates that immediately after the recess, the court summarized for the record what had been said off the record in the robing room:

> THE COURT: We're in the robing room outside the presence of the jury.
>
> The defense made motions at the conclusion of the People's case for trial order of dismissal, which the Court denied.
>
> Defense made motions at the conclusion of the entire case to dismiss the counts of the indictment, which the Court likewise denied.

(Id. at 661-62). The court made no effort to describe the grounds for the defense motions. (Id.).[1]

---

[1]    It is clear that the motions were made off the record. If a reporter had been present to transcribe the argument, there would have been no need for Justice Fisch to state for the record that the motions had been made. In addition, Fernandez's current counsel has represented that he has tried his "best" to find all the minutes, and could not find any minutes of the argument of the motions. (5/22/08 Tr. at 7).

-7-

c.    **The Charge**

Following the lawyers' summations (<u>id.</u> at 678-768), the court charged the jury on September 22, 2003 (<u>id.</u> at 770-807). The jury was presented with four counts:  the two counts of murder (intentional murder and depraved indifference murder) and manslaughter in the first and second degrees.  (<u>Id.</u> at 674).

The court instructed the jury that count one charged the defendants with murder in the second degree, based on an intentional murder theory.  The court instructed the jury that "a person is guilty of Murder in the Second Degree when with intent to cause the death of another person, he causes the death of such person." (<u>Id.</u> at 789).  The court explained that a person acted with intent to cause the death of another when his "conscious objective or purpose is to cause the death of another."  (<u>Id.</u>).

The court instructed the jury that if it found the defendant it was considering guilty on count one, its deliberations were complete as to that defendant, but that if it found the defendant not guilty on count one, it was then to consider count two.  (<u>Id.</u> at 790-91).  Count two also charged murder in the second degree, but based on a depraved indifference theory.  The court instructed the jury that:

> [A] person is guilty of Murder in the Second Degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of that person.
>
>          . . .

-8-

> Under our law a crime committed
> recklessly is generally regarded as less
> serious and blameworthy than a crime
> committed intentionally.  But when reckless
> conduct is engaged in under circumstances
> evincing a depraved indifference to human
> life, the law regards that conduct as so
> serious, so egregious as to be the equivalent
> of intentional conduct.  Conduct evincing a
> depraved indifference to human life is much
> more serious and blameworthy than conduct
> which is merely reckless.  It is conduct
> which is beyond being reckless, is so wanton,
> so deficient in moral sense and concern, so
> devoid of regard for the life or lives of
> others as to equal in blameworthiness
> intentional conduct which produces the same
> result.  It must be imminently dangerous and
> present a very high risk of death to others.
>
> In determining whether a person's
> conduct evinced a depraved indifference to
> human life, a jury would have to decide
> whether the circumstances surrounding his
> reckless conduct, when <u>objectively viewed</u>,
> made it so uncaring, so callous, so dangerous
> and so inhuman as to demonstrate an attitude
> of total and utter disregard for the life of
> the person endangered.

(<u>Id.</u> at 791-92a) (emphasis added).

The court then instructed the jury that if it found the

defendant it was considering guilty on count two, its

deliberations were complete, but that if it found the defendant

not guilty on count two, it was to consider count three, which

charged manslaughter in the first degree.  (<u>Id.</u> at 793).  The

court explained that a defendant committed manslaughter in the

first degree "when with intent to cause serious physical injury

to another person, he causes the death of such person."  (<u>Id.</u> at

794).

Finally, the court instructed the jury that if it found

the defendant it was considering guilty on count three, its

-9-

deliberations were complete, but that if it found the defendant not guilty on count three, it was to consider count four, which charged the defendants with manslaughter in the second degree. (Id. at 795).  The court explained that a person was guilty of manslaughter in the second degree when he "recklessly causes the death of another person."  (Id.).

### d.  **The Verdict**

On September 23, 2003, the jury returned its verdict. It found Fernandez not guilty on count one, the intentional murder count.  (Id. at 825).  The jury found Fernandez guilty, however, on count two, the depraved indifference murder count. (Id.).  The jury found Angel, the co-defendant, not guilty on counts one and two and guilty on count three, manslaughter in the first degree.  (Id. at 826).  See People v. Martinez, 30 A.D.3d 353, 353 (1st Dep't 2006).

### e.  **The Post-Verdict Proceedings**

On November 5, 2003, Fernandez moved to set aside the verdict pursuant to New York Criminal Procedure Law § 330.30 on the grounds, inter alia, that:  (1) the evidence was legally insufficient to sustain the depraved indifference conviction and (2) the depraved indifference statute was unconstitutional. (Resp't Ex. 1).  In opposing the motion, the People argued, inter alia, that Fernandez had failed to preserve the claims because he had failed to move to dismiss either at the close of the People's case or at the close of all the evidence.  (Resp't Ex. 2).

On December 1, 2003, as a consequence of the People's argument that he had failed to preserve his claims, Fernandez moved to resettle the record

> to include the content [of] an oral motion, made by defendant's trial counsel to the Court and in the presence of the district attorney, at the end of the People's case and renewed at the end of the defense case, to dismiss the charge of Murder in the Second Degree (Penal Law § 125.25(2) ("depraved indifference murder"), on the grounds that the evidence was legally insufficient to sustain the charge.

(Resp't Ex. 3). In support of his motion, Fernandez submitted an affirmation from Sam Braverman, Fernandez's trial counsel. (Id.). Braverman represented that he had moved to dismiss the depraved indifference count both at the end of the People's case and at the end of the defense case. (Id.). The People opposed the motion to resettle, stating in its supporting affirmation that "[t]he trial Assistant District Attorney has no independent recollection of defense making any motions to dismiss any counts of the indictment either at the close of the People's case or at the close of all the evidence." (Resp't Ex. 4).

On December 15, 2003, the court granted the motion to resettle the record, ruling from the bench:

> That upon conclusion of the case and prior to the case being submitted to the jury, there was a motion [for a directed] verdict. That was general in nature, there were no specific objections made. The grounds being that the evidence was insufficient to support a conviction of depraved indifference murder under 125.25 Subdivision 2. Preservation requires something specific.

> So there was an application which I am
> permitting, to resettle the record, to make
> all of the arguments.

(12/15/03 Tr. at 9-10).[2]

The court proceeded to hear argument on the two issues presented by Fernandez's motion to dismiss. (Id. at 10-17). The court then ruled orally, denying both prongs of the motion on the merits. (Id. at 17-18). As to the legal insufficiency argument, the court explicitly relied on People v. Asaro, 182 A.D.2d 823 (1st Dep't 1992), and People v. Rios, 230 A.D.2d 87 (2d Dep't 1997), decisions that sustained depraved indifference convictions where the victims were hit once and then died. (Id.).[3]

On December 17, 2003, the court sentenced Fernandez to a term of nineteen years to life. (12/17/03 Tr. at 25). Angel, the co-defendant, was sentenced to ten years for his conviction of manslaughter in the first degree. (Id.).

Although it had denied Fernandez's motion to set aside the verdict orally on December 15, 2003, the court denied the motion again on March 25, 2004, in a written decision. (Resp't Ex. 5). Without holding that the legal insufficiency claim was procedurally barred, the court addressed the claim on the merits, relying on, inter alia, Register, Asaro, and Rios. (Id. at 3-7).

---

[2]    Although the transcript shows that the court said "a motion to set aside the verdict," the court obviously meant to say "a motion for a directed verdict," as the jury had not yet rendered its verdict when the defense motions were made.

[3]    The transcript shows the court referring to Osorio, but the case is actually People v. Asaro, 182 A.D.2d 823. The reference to Rios is to People v. Rios, 230 A.D.2d 87.

In contrast, the court held that the constitutional claim was procedurally barred because it was unpreserved, and then rejected it on the merits as well, assuming _arguendo_ that it had been preserved.  (_Id._ at 7-16).

### 2.  **The Appeals**

On appeal to the Appellate Division, Fernandez argued that the evidence was legally insufficient to meet the requirements of the depraved indifference murder statute, the depraved indifference murder statute violated the U.S. Constitution, and the trial court improperly refused to include criminally negligent homicide as a lesser offense.  (Resp't Ex. 6).  In opposing the appeal, the People argued, _inter alia_, that Fernandez had failed to preserve his claim that the evidence was legally insufficient to support a conviction for depraved indifference murder because Fernandez had failed to move to dismiss either at the close of the People's case or at the close of all the evidence.  (Resp't Ex. 7 at 26).  Although the People acknowledged that the trial court had granted the motion to resettle, it argued that "no such resettling actually took place."  (_Id._ at 27).

On November 17, 2005, the First Department affirmed. _People v. Fernandez_, 23 A.D.3d 252 (1st Dep't 2005).  Without discussion or explanation, the court held that Fernandez's legal sufficiency argument was "not preserved for appellate review." _Id._ at 252.  It went on to hold, however, that "[w]ere we to review [the legal insufficiency claim], we would reject it."  _Id._

-13-

The court explained that the evidence established that "defendant walked over to an ongoing fight between the victim and the codefendant, beat the victim on the head with a club-like metal flashlight for at least 20 to 45 seconds, hit him with sufficient force to split open his head with one blow and crack his skull with another, and then left him alone, lying in the middle of oncoming traffic." Id.  Citing People v. Sanchez, 98 N.Y.2d 373 (2002), and People v. Atkinson, 21 A.D.3d 145 (2d Dep't 2005), the court concluded that a reasonable jury could have found that "defendant acted recklessly and with depraved indifference to human life rather than with the intent to cause death."  23 A.D.3d at 253.

On January 16, 2006, petitioner moved to reargue the First Department's decision to affirm the conviction.  (Resp't Ex. 9).  On July 14, 2006, while the motion for reargument was pending, Fernandez's counsel wrote the First Department to advise that the Court of Appeals had issued three decisions in the prior week -- including Feingold -- that "compel[led] . . . the reversal of Mr. Fernandez's conviction."  (Resp't Ex. 12).  On October 19, 2006, the First Department denied the motion to reargue by summary order.  (Resp't Ex. 14).

In the meantime, on January 22, 2006, Fernandez applied by letter for leave to appeal to the Court of Appeals.  (Resp't Ex. 15).  On September 28, 2006, a judge of the Court of Appeals denied Fernandez leave to appeal, in a one-word order that said "Denied." People v. Fernandez, 7 N.Y.3d 848 (2006).

### 3.    __This Petition__

On July 10, 2007, Fernandez filed this petition for a writ of habeas corpus, raising two issues:  (1) the evidence was legally insufficient to support the depraved indifference murder conviction, and (2) the depraved indifference murder statute is unconstitutional.  The People opposed the petition, again both on the procedural ground that the two claims were unpreserved and on the merits.

I heard oral argument on May 22, 2008, at the conclusion of which I reserved decision.

### __DISCUSSION__

Three principal issues are presented:  (1) whether Fernandez's legal insufficiency claim is barred because Fernandez failed to preserve it, (2) assuming the claim is not procedurally barred, whether the evidence presented was sufficient to sustain the conviction for depraved indifference murder, and (3) assuming the evidence presented was legally insufficient to sustain the conviction, whether Fernandez is entitled to federal habeas relief.  I address each issue in turn.[4]

### A.    __The Procedural Bar__

### 1.    __Applicable Law__

Federal habeas review is generally prohibited if a state court judgment "rests on a state law ground that is

---

[4]    In view of my rulings below, I do not reach Fernandez's claim that the depraved indifference murder statute is unconstitutional.

independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).  A defendant whose claim is rejected on appeal in state court for failure to comply with a state procedural rule, such as New York's contemporaneous objection rule, may be precluded from raising that claim in a federal habeas corpus petition.  See id. at 729-30; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). These procedural default rules thus hold that even when a petitioner presents a colorable federal constitutional claim, federal habeas review is barred if the claim was denied by a state court on a state procedural ground that is both "'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." Harris v. Reed, 489 U.S. 255, 260-61 (1989); see Coleman, 501 U.S. at 729-30.

New York's contemporaneous objection rule, codified in N.Y. Criminal Procedure Law § 470.05, provides that an issue is preserved for appeal as a matter of law only when the appellant objected on that ground during the trial.  N.Y. Crim. Proc. Law § 470.05(2) (McKinney 1994); Glenn v. Bartlett, 98 F.3d 721, 724 n.2 (2d Cir. 1996), cert. denied, 520 U.S. 1108 (1997).  Hence, if a party fails to assert a claim in the trial court, appellate courts generally will not consider the claim.  N.Y. Crim. Proc. Law § 470.05(2); People v. Cona, 49 N.Y.2d 26, 33 (1979).

For a state law ground to be "independent and adequate," the state appellate court "must actually have relied on the procedural bar as an independent basis for its disposition

-16-

of the case." <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000) (citing <u>Harris</u>, 489 U.S. at 261-62).  In addition, the state procedural rule relied upon must not be "interwoven with" federal law, <u>Coleman</u>, 501 U.S. at 733 (quoting <u>Michigan v. Long</u>, 436 U.S. 1032, 1040-41 (1983)), and must be "firmly established and regularly followed" by the state.  <u>Garcia</u>, 188 F.3d at 77 (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).  The Second Circuit has held that the application of New York's contemporaneous objection rule may constitute an independent and adequate state ground that procedurally bars federal habeas review.  <u>Id.</u> at 79; <u>see also</u> <u>Jones v. Duncan</u>, 162 F. Supp. 2d 204, 213 (S.D.N.Y. 2001).

Even where a state court judgment rests on an adequate and independent state ground, however, habeas review of the defaulted claim is <u>not</u> barred where a petitioner can demonstrate cause for and prejudice from the default, <u>Grey v. Hoke</u>, 933 F.2d 117, 121 (2d Cir. 1991) ("[P]etitioner's forfeiture in state court of his . . . claims bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom."); <u>see also</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90-91 (1977); <u>Gray v. Netherland</u>, 518 U.S. 152, 152-53 (1996), or where the petitioner can show that "failure to consider the federal claim will result in a fundamental miscarriage of justice." <u>Harris</u>, 489 U.S. at 262 (internal quotations and citations omitted).

Cause exists if "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 479 (1986); see also McCleskey v. Zant, 499 U.S. 467, 493 (1991). Examples of "cause" include interference by outside officials or the unavailability of a defense due to its constitutional novelty. Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999) (citations omitted). The "prejudice" requirement is met by a showing of "actual prejudice resulting from the errors of which [petitioner] complains." United States v. Frady, 456 U.S. 152, 168 (1982) (internal quotations omitted). The error must have resulted in "substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. at 494 (citations omitted). A "miscarriage of justice" can be shown only where a petitioner can supplement his alleged constitutional violation with a "'colorable showing of factual innocence.'" McCleskey v. Zant, 499 U.S. at 495. This requires a showing of actual innocence, and not just a showing of legal insufficiency. Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (citations omitted).

### 2. **Application**

The People's argument that the legal insufficiency claim is procedurally barred raises three questions:  (a) whether Fernandez moved to dismiss the depraved indifference murder count for legal insufficiency at the close of all the evidence; (b) if

-18-

so, whether the motion was sufficiently specific to preserve the issue for appeal, and (c) whether, even assuming the claim was procedurally defaulted, Fernandez has overcome the default by showing either cause and prejudice or a fundamental miscarriage of justice.

### a.    Did Fernandez Move to Dismiss?

The People dispute whether Fernandez actually made a motion to dismiss at the close of the evidence. (See 5/22/08 Tr. at 3-4). Indeed, the District Attorney's office continues to take the position that "there is no evidence of a motion whatsoever" (id. at 4; see id. at 5 ("I don't want to concede anything . . . .")), relying on the affirmation of the trial assistant district attorney in opposition to the motion to resettle the record, who stated, while referring to herself in the third person:

> The trial Assistant District Attorney has no
> independent recollection of defense making
> any motions to dismiss any counts of the
> indictment either at the close of the
> People's case or at the close of all the
> evidence.

(Resp't Ex. 4). The absence of any "independent recollection" by the trial assistant of defense motions, however, is simply outweighed by the overwhelming evidence that defense motions were made at the conclusion of the evidence, and I find that such a motion was made.

First, the trial transcript confirms that at the close of all the evidence, the court stated on the record "[w]e'll have

-19-

our pre-summation conference inside and then we'll go back on the record." (Trial Tr. at 661). The transcript then shows that a recess was taken, and that following the recess, the court summarized what had transpired off the record. (Id. at 661-63).

Second, in that summary, Justice Fisch stated that defense motions were made: "Defense made motions at the conclusion of the entire case to dismiss the counts of the indictment, which the Court . . . denied." (Id. at 662).

Third, in support of Fernandez's motion to resettle the record, his trial counsel stated specifically, under penalty of perjury, that he "made motions to dismiss the count of depraved indifference murder at the end of the People's case and at the end of the defense case." (Resp't Ex. 3).

Fourth, on December 15, 2003, in granting Fernandez's motion to resettle, Justice Fisch again concluded that "upon conclusion of the case and prior to the case being submitted to the jury, there was a motion to set aside the verdict." (12/15/03 Tr. at 9).

Accordingly, I conclude that Fernandez did make a motion to dismiss the depraved indifference murder count at the close of all the evidence.[5]

---

[5] The evidence is not as compelling as to whether Fernandez made a motion to dismiss at the close of the People's case, but it appears that his counsel did so then as well. (See Trial Tr. at 627 (defense counsel stated he was "deferring motions to a further time"), 661-62 (court noting that "defense made motions at the conclusion of the People's case for trial order of dismissal"); Resp't Ex. 3 (Braverman representing he moved both "at the end of the People's case and at the end of the defense case"); but see 12/15/03 Tr. at 9-10 (no mention of any

### b.   **Was the Motion Sufficiently Specific?**

The People argue that even assuming Fernandez made a motion to dismiss at the end of the evidence, it was insufficiently specific to preserve the claim for appellate review.  For support, the People rely on Justice Fisch's statement in granting the motion to resettle that:

> upon conclusion of the case and prior to the case being submitted to the jury, there was a motion [for a directed] verdict.  <u>That was general in nature, there were no specific objections made.</u>  The grounds being that the evidence was insufficient to support a conviction of depraved indifference murder under 125.25 Subdivision 2.  <u>Preservation requires something specific.</u>

(12/15/03 Tr. at 9-10)(emphasis added).

Under New York state law, neither a general motion to dismiss nor a post-verdict motion is sufficient to preserve an issue for appeal.  <u>People v. Hines</u>, 97 N.Y.2d 56, 61 (2001) (on a post-verdict motion pursuant to § 330.30, "an insufficiency argument may not be addressed unless it has been properly reserved for review during the trial"); <u>People v. Gray</u>, 86 N.Y.2d 10, 19 (1995) (motion to dismiss must be "'specifically directed'" at the legal insufficiency to preserve issue for appeal).  A general motion to dismiss is a one that is not "'specifically directed' at the alleged error." <u>Gray</u>, 86 N.Y.2d at 19 (citing <u>People v. Cona</u>, 49 N.Y.2d at 33 n.2).

I conclude that, notwithstanding Justice Fisch's observation that "the motion was general in nature," Fernandez's

motion at end of People's case)).

-21-

motion at the conclusion of the evidence attacking the
sufficiency of the evidence was specific enough to preserve the
issue for appellate review.

First, Fernandez's counsel clearly was sufficiently
specific to give both the court and the People adequate notice of
the basis for the motion.  As Justice Fisch found, the "grounds"
of the motion were that "the evidence was insufficient to support
a conviction of depraved indifference murder under 125.25
Subdivision 2."  (12/15/03 Tr. at 10).  This is precisely the
claim that Fernandez advanced in his § 330.30 post-verdict
motion, on appeal to the First Department, in his letter
requesting leave to appeal to the Court of Appeals, and in his
habeas petition here.  See N.Y. Crim. Proc. Law § 470.05(2) (for
preservation purposes, objection to alleged error "is sufficient
if the party made his position with respect to the ruling or
instruction known to the court").[6]

Second, despite his initial observation that the motion
was "general in nature" (12/15/03 Tr. at 9-10), Justice Fisch
treated the motion as being adequately specific to raise the
legal sufficiency claim.  Justice Fisch concluded:  "So there was
an application which I am permitting, to resettle the record, to
make all of the arguments."  (Id. at 10) (emphasis added).  While
this statement is far from clear, it does appear that the court

---

[6]     Fernandez had also moved, after the openings, to
dismiss on the same grounds, and thus the motion to dismiss at
the close of the evidence was a continuation of a theme that
Fernandez's counsel had introduced earlier.  (Trial Tr. at 84-
85).

was permitting Fernandez "to make all of the arguments" with respect to the legal insufficiency claim.[7]  Moreover, the court considered the claim on the merits, both at the December 15, 2003 proceeding (12/15/03 Tr. at 17-18) and again in its written decision issued on March 25, 2004.  (Resp't Ex. 5 at 3-7).  Although he noted that the constitutional claim was procedurally barred, he made no such observation with respect to the legal insufficiency claim.  (Id.).[8]

Third, Fernandez's motion was sufficiently specific to permit the trial court to take any action it deemed appropriate.  The People cannot point to anything that the court would have done differently if Fernandez had been more specific in his legal insufficiency argument.  (See 5/22/08 Tr. at 10-11).  The trial court did not actually rely on the alleged procedural default, and "perfect compliance with the state rule would [not] have changed the trial court's decision."  Cotto v. Herbert, 331 F.3d

---

[7]    At the oral argument of this habeas petition, defense counsel explained:  "I filed the post-verdict motion prior to filing, more or less simultaneously with filing the motion to resettle.  My understanding was that Judge Fisch was granting the motion to allow the arguments that I had already made."  (5/22/08 Tr. at 16).  This makes sense and is likely what Justice Fisch intended with respect to the legal insufficiency claim.

[8]    In Feingold itself, the Court of Appeals rejected the People's contention that the defendant's argument as to the definition of "depraved indifference" was unpreserved because he did not "plainly present it to the trial court."  7 N.Y.3d at 290.  Instead, the Court of Appeals held that "[t]he trial judge's decision . . . demonstrates that he specifically confronted and resolved this issue."  Id.  The same can be said here, as Justice Fisch confronted and resolved the issue of the legal sufficiency of the evidence of depraved indifference murder.

217, 240 (2d Cir. 2003) (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 381-85 (2002)).[9]

Fourth, Fernandez must be given the benefit of the doubt as to what his lawyer said when he moved to dismiss at the close of the evidence, for the argument of the motion was not transcribed.  As the Second Circuit has recognized, a trial transcript may be an "instrument[] needed to vindicate legal rights," <u>Fullan v. Comm'r of Corr. of New York</u>, 891 F.2d 1007, 1010 (2d Cir. 1989), and thus a defendant in a criminal case who has a right to appeal a conviction has certain rights to a transcript, <u>see</u> <u>id.</u> at 1010-11, or to "[a]lternative methods of reporting trial proceedings . . . if they place before the appellate court an equivalent report of the events at trial," <u>Draper v. Washington</u>, 372 U.S. 487, 495 (1963).  Here, the proceedings relating to the motion to dismiss at the close of the evidence were not transcribed; indeed, they were held off the record in the robing room, without a court reporter even present.  The alternative means utilized -- the trial court's after-the-fact summary of what transpired in the robing room -- did not provide "an equivalent report" of what happened, as the court did not even attempt to describe what defense counsel had said in

---

[9]    The U.S. Supreme Court has held that the contemporaneous objection rule rests on "the general principle that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review."  <u>Osborne v. Ohio</u>, 495 U.S. 103, 125 (1990).

making the motion.  Under these circumstances, when the People
are arguing that Fernandez is precluded from seeking relief
because his counsel's motion was insufficiently specific,
Fernandez must be given the benefit of the doubt, for no
transcript exists to permit me or any reviewing court to consider
whether defense counsel provided adequate detail.

Finally, it is clear that Fernandez "substantially
complied" with the contemporaneous objection rule, given "the
realities of trial."  Cotto v. Herbert, 331 F.3d at 240 (quoting
Lee, 534 U.S. at 381 fn.12, 382.  In view of the evolving state
of the law at the time, defense counsel could not have been
expected to comply perfectly with the contemporaneous objection
rule.[10]

Accordingly, the People's argument that the motion to
dismiss was insufficiently specific to preserve the legal
insufficiency argument is rejected.

  **c.  Assuming a Procedural Default,
   Has Fernandez Shown a Basis for Overcoming it?**

Even assuming that Fernandez's legal sufficiency claim
was not preserved, I conclude that he has demonstrated (i) cause
for and prejudice from the default sufficient to justify the
exercise of habeas review, and (ii) failure to consider the claim
would result in manifest injustice.

---

[10]    In fact, once Feingold was decided, Fernandez's new
counsel acted diligently, as he wrote to the First Department
within nine calendar days to ask it to consider Feingold and the
related cases in deciding the motion for reargument.  (See Respt.
Ex. 12).

First, cause existed for Fernandez's counsel's failure to be more specific (assuming _arguendo_ that he was insufficiently specific). As noted above, given the evolving state of the law on the definition of "depraved indifference" at the time, counsel could not do more than argue that the evidence was legally insufficient to sustain a conviction for depraved indifference murder. The evolvement of the law is surely an "objective factor external to the defense" that trial counsel could not reasonably have foreseen at the time of trial. _Murray v. Carrier_, 477 U.S. at 488); _see also_ _Strickler v. Greene_, 527 U.S. at 283 n.24 ("cause" includes unavailability of a defense due to its constitutional novelty).

Second, Fernandez has also demonstrated "actual prejudice" as a result of the state courts' rulings of which he now complains. _United States v. Frady_, 456 U.S. at 168. As discussed below, the rulings have resulted in a "substantial disadvantage," of constitutional dimension. _Murray_, 477 U.S. at 493-94. Indeed, the difference between a conviction for murder in the second degree and one for manslaughter conviction is substantial -- the difference potentially between a term of imprisonment of nineteen years to life (for depraved indifference murder) and a term of five to fifteen years imprisonment (for manslaughter in the second degree). (_See_ 5/22/08 Tr. at 25).

Third, for these reasons as well, I conclude that a fundamental miscarriage of justice would result if the legal insufficiency claim were not considered on the merits. Fernandez

has made a colorable showing here that he is actually innocent of depraved indifference murder.  While the evidence surely proved that he was guilty of manslaughter, as discussed below, his actions -- even as described by the People at trial -- simply did not constitute depraved indifference murder as a matter of law, and it would be manifestly unjust for him to serve a sentence for a crime that he did not commit.

Accordingly, I consider Fernandez's legal insufficiency claim on the merits.

B.    **The Sufficiency of the Evidence**

I consider the issue of whether the evidence presented at trial was sufficient to sustain the conviction for depraved indifference murder by (1) reviewing the depraved indifference murder statute and the developments in the case law, (2) addressing whether these developments in the law should be applied to cases that were pending on direct appeal, and (3) considering the People's evidence presented at trial under the new depraved indifference law.

1.    **Depraved Indifference Murder**

Depraved indifference murder is governed by § 125.25(2) of the Penal Law, which provides:

> A person is guilty of murder in the second degree when: . . .
>
> 2.    Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person . . . .

-27-

N.Y. Penal Law § 125.25(2).  A person acts "recklessly" with
respect to the death of another "when he is aware of and
consciously disregards a substantial and unjustifiable risk that
[death] will occur."  N.Y. Penal Law § 15.05(3) (McKinney 2004);
see Policano v. Herbert ("Policano I"), 7 N.Y.3d 588, 596 (2006).
"The risk must be of such nature and degree that disregard
thereof constitutes a gross deviation from the standard of
conduct that a reasonable person would observe in the situation."
N.Y. Penal Law § 15.05(3).

     In Register, the Court of Appeals held that depraved
indifference murder required a showing of "'circumstances
evincing a depraved indifference to human life.'"  60 N.Y.2d at
276 (citation omitted).  The Court ruled that "the focus of the
offense is not upon the subjective intent of the defendant, as it
is with intentional murder . . . , but rather upon an objective
assessment of the degree of risk presented by defendant's
reckless conduct."  Id. at 277 (citations omitted).  The key,
according to the Court, was not the defendant's mens rea, but the
objective circumstances in which the conduct occurred.  Id. at
276-78.

     In People v. Sanchez, 98 N.Y.2d 373, the Court of
Appeals reaffirmed Register.  The Court reiterated, as the
majority held in Register, that the focus of depraved
indifference murder was not on "the subjective intent of the
defendant, 'but rather upon an objective assessment of the degree
of risk presented by defendant's reckless conduct.'"  98 N.Y.2d
at 379-80 (quoting Register, 60 N.Y.2d at 277)).

In <u>Feingold</u>, the Court of Appeals explicitly overruled both <u>Register</u> and <u>Sanchez</u>. <u>Feingold</u>, 7 N.Y.3d at 294 ("we conclude that the law has changed to such an extent that <u>People v. Register</u> and <u>People v. Sanchez</u> should no longer be followed"). In doing so, the Court held that the depraved indifference requirement <u>does</u> refer to a mental state. <u>Id.</u>  In other words, the Court held that to convict a defendant of depraved indifference murder, a jury would have to find the requisite mental state and could not rely solely on the objective factual circumstances surrounding the crime. <u>Id.</u> at 294-95.  The Court wrote:  "we cannot conceive that a person may be guilty of a depraved indifference crime without being depravedly indifferent." <u>Id.</u> at 295.  The Court explained that:

> depraved indifference is best understood as
> an utter disregard for the value of human
> life -- a willingness to act not because one
> intends harm, but because one simply doesn't
> care whether grievous harm results or not.

<u>Id.</u> at 296 (quoting <u>People v. Suarez</u>, 6 N.Y.3d 202, 214 (2005)).

Although the Court of Appeals did not overrule <u>Register</u> and <u>Sanchez</u> until its decision in <u>Feingold</u> in 2006, it had begun to chip away at the holdings of those two cases earlier.  In <u>Policano I</u>, the Court of Appeals noted that its interpretation of the depraved indifference statute "gradually and perceptibly changed from an objectively determined degree-of-risk standard (the <u>Register</u> formulation) to a mens rea, beginning with [its] decision in <u>Hafeez</u> in 2003, continuing in [its] decisions in <u>Gonzalez</u>, <u>Payne</u> and <u>Suarez</u> in 2004 and 2005, and ending with

[its] decision in Feingold in 2006." Policano I, 7 N.Y.3d at 602-03.

In People v. Hafeez, 100 N.Y.2d 253 (2003), which was decided on June 10, 2003, some three months before the trial in the instant case, two men became involved in a confrontation with the victim at a bar. Months later, the two men plotted to seek revenge, waited for the victim outside the same bar, and attacked him when he came out, stabbing him fatally in the heart. They then drove away. Id. at 256-57. The defendant -- one of the two men -- was acquitted of intentional murder, but convicted of depraved indifference murder. The Appellate Division reversed, holding that the evidence was legally insufficient to establish depraved indifference murder. Id. at 257. The Court of Appeals affirmed, holding that the attack "was a quintessentially intentional attack directed solely at the victim." Id. at 258.

The next case in the series, People v. Gonzalez, 1 N.Y.3d 464 (2004), was decided by the Court of Appeals on March 25, 2004, after Fernandez's trial but well before the First Department affirmed his conviction on November 17, 2005. In Gonzalez, the defendant kicked in the door of a barbershop, pulled out a gun, shot the victim in the chest from six or seven feet away, and then, as the victim fell to the floor and was lying on the ground, shot him nine more times. Id. at 465. The jury acquitted the defendant of intentional murder, but convicted him of depraved indifference murder. The Fourth Department reversed, holding that the evidence was legally insufficient to

establish depraved indifference murder.  Id. at 466.  The Court

of Appeals affirmed, holding that "[t]he only reasonable view of

the evidence here was that defendant intentionally killed the

victim by aiming a gun directly at him and shooting him 10 times

at close range, even after he had fallen to the ground."  Id. at

467.  The Court noted that "a person cannot act both

intentionally and recklessly with respect to the same result."

Id. at 468.  Moreover, the Court explained that a depraved

indifference murder is not one that is "extremely, even

heinously, intentional," but rather, it is one that is

"recklessly indifferent, depravedly so, to whether death occurs."

Id.

        In People v. Payne, 3 N.Y.3d 266 (2004), which was

decided on October 19, 2004, again before the First Department's

affirmance of Fernandez's conviction, the defendant went to the

victim's home and shot him at point-blank range with a 12-gauge

shotgun, killing him.  The defendant had been drinking heavily

and the victim had enraged the defendant.  The jury acquitted the

defendant of intentional murder, but convicted him of depraved

indifference murder.  The Second Department affirmed.  Id. at

269.  The Court of Appeals reversed, holding that the defendant

did not commit depraved indifference murder.  Id.  The Court

noted that:

> depraved indifference murder may not be
> properly charged in the overwhelming majority
> of homicides that are prosecuted in New York.
> While we have identified instances in which a
> killing could qualify as depraved
> indifference murder, a point-blank shooting
> is ordinarily not one of them.

Id. at 270.  The Court held that "[t]he use of a weapon can never result in depraved indifference murder when, as here, there is a manifest intent to kill."  Id. at 271.  Likewise, the Court concluded that "[f]iring more rounds or inflicting more wounds does not make the act more depravedly indifferent, but more intentional."  Id. at 272 (emphasis in original).

Finally, in People v. Suarez, 6 N.Y.3d 202, decided on December 22, 2005, after the First Department's decision affirming Fernandez's conviction, but before its decision denying Fernandez's motion for reargument and before the denial of his application for leave to appeal, the Court of Appeals addressed two cases.  In the first (Suarez), the defendant stabbed his girlfriend three times and fled without summoning assistance, leaving her to bleed to death.  The jury acquitted the defendant of intentional murder, but convicted him of depraved indifference murder.  The First Department affirmed the conviction.  Id. at 205.  In the second (McPherson), the defendant went to the home of her victim (a former boyfriend and the father of her child).  After an argument, the victim pushed the defendant and raised his hand as if to hit her.  She pulled out a knife and stabbed him once in the chest.  She then called 911, asked for an ambulance, and then left the scene.  The victim was taken to a hospital, where he bled to death from the stab wound.  In a non-jury trial, the court found her guilty of depraved indifference murder.  The Second Department affirmed.  Id. at 205-06.

The Court of Appeals reversed both convictions, finding no depraved indifference murder in either case. Id. at 206. The Court noted, with respect to the defendant's failure in Suarez to seek assistance for the victim, that "a killing (whether intentional or unintentional) is not transformed into depraved indifference murder simply because the killer does not summon aid for the victim." Id. at 210. The Court reiterated that "a defendant who intends to injure or kill a particular person cannot generally be said to be 'indifferent' -- depravedly or otherwise -- to the fate of that person." Id. at 211. The Court also noted that "[a] defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances." Id. at 212. The Court held that it was "depart[ing] slightly from the Register formulation . . . [to] make clear that the additional requirement of depraved indifference has meaning independent of the gravity of the risk." Id. at 215. Finally, the Court concluded:

> When depraved indifference murder is properly understood, "twin-count" indictments -- charging both intentional homicide and depraved indifference murder -- should be rare. Twin-count submissions to a jury, even rarer. For by the time the proof has been presented, it should be obvious in most cases whether or not the evidence establishes "an intentional [killing] or no other . . . . Thus, where twin-count indictments are lodged, trial courts should presume "that the defendant's conduct falls within only one category of murder and, unless compelling evidence is presented to the contrary, dismiss the count that is least appropriate to the facts."

Id. (citation omitted and quoting Abraham Abramovsky and Jonathan

I. Edelstein, <u>Depraved Indifference Murder Prosecutions in New York:  Time for Substantive and Procedural Clarification</u>, 55 Syracuse L. Rev. 455, 491 (2005)).

The case law provides the following examples of conduct that constitutes depraved indifference murder:

- firing into a crowd; <u>Canteen v. Smith</u>, No. 05 Civ. 4580 (KMW), 2008 WL 2115245, at *8 (S.D.N.Y. May 14, 2008) (denying habeas petition); <u>see also</u> <u>People v. Jernatowski</u>, 238 N.Y. 188, 190, 192 (1924) (firing into house with several people inside);

- driving a car on crowded sidewalks at a high speed, <u>People v. Gomez</u>, 65 N.Y.2d 9, 10-11 (1985);

- opening a lion's cage at the zoo, <u>Suarez</u>, 6 N.Y.3d at 214;

- placing a time bomb in a public place, <u>id.</u>;

- poisoning a well from which people usually draw water, <u>id.</u>;

- opening a drawbridge as a train is about to pass over it, <u>id.</u>;

- dropping stones from an overpass onto a busy highway, <u>id.</u>;

- shooting a partially-loaded gun point-blank into someone's chest during a game of Russian roulette, <u>People v. Roe</u>, 74 N.Y.2d 20, 22, 26 (1989);

- robbing an intoxicated individual, forcing him out of a car onto the side of a dark, remote, snowy road, only partially dressed and without shoes, in subfreezing temperatures, where he is struck and killed by a passing truck, <u>People v. Kibbe</u>, 35 N.Y.2d 407, 410-11 (1974);

- reaching around behind a door and firing a gun into an area where children were playing, <u>Sanchez</u>, 98 N.Y.2d at 375-76, 377, 386; and

- repeatedly beating, without the intent to kill, a three-year-old over the course of five days, resulting in his death, <u>People v. Poplis</u>, 30 N.Y.2d 85, 87 (1972).

The bulk of these examples involved actions that were not directed at a particular individual, but that were taken without regard to whether "grievous harm" would result. The last example did involve an intent to injure a "particular victim," as the defendant beat the child, but there was more: the defendant's acts were "marked by uncommon brutality -- coupled not with an intent to kill, . . . but with depraved indifference to the victim's plight." Payne, 3 N.Y.3d at 271. Moreover, the actions were directed at a "particularly vulnerable victim," a three-year old child. Suarez, 6 N.Y.3d at 212-13; see also People v. Nunez, 2008 WL 1915179 (4th Dep't May 2, 2008) (brutal attack on vulnerable victim establishes depravity).

### 2.  Applicability to Pending Cases

The next issue is whether the developments in the law governing the depraved indifference murder statute -- starting with Hafeez and continuing through Feingold -- should have been applied to the charges against Fernandez. The answer is yes.

Fernandez's conviction became "final" on December 27, 2006, when his time to file a petition for a writ of certiorari to the United States Supreme Court expired; this was ninety days after September 28, 2006, the day the Court of Appeals denied his application for leave to appeal. See Policano I, 7 N.Y.3d at 593; Brown v. Greiner, 409 F.3d 523, 534 n.3 (2d Cir. 2005).

Feingold and the quartet of cases that preceded it were all decided before Fernandez's conviction became final. Hafeez was decided on June 10, 2003, even before Fernandez's trial.

-35-

<u>Gonzalez</u> and <u>Payne</u> were decided after Fernandez's trial, but
before the First Department affirmed his conviction.  <u>Suarez</u> and
<u>Feingold</u> were decided after the First Department's affirmance of
the conviction, but before the First Department denied
Fernandez's motion for reargument and before the Court of Appeals
denied his application for leave to appeal.

        The People contend that the law at the time of the
conviction governed and that Fernandez is not entitled to the
benefit of the changes in the law before his conviction became
final.  (<u>See</u> 5/22/08 Tr. at 23-25).  I disagree.

        First, New York courts have applied the new depraved
indifference case law to cases pending on direct appeal, even
where the convictions were obtained before the law was changed.
The Third Department has explicitly held that the changes in the
depraved indifference law are applicable to "defendants whose
convictions became final after the law had changed."  <u>People v.</u>
<u>George</u>, 43 A.D.3d 560, 561 (3d Dep't 2007).[11]  As the Third
Department pointed out, "the Court of Appeals has consistently
applied the current law to direct appeals involving depraved
indifference, even where . . . defendant's conviction preceded
the change of law initiated on June 10, 2003 in <u>Hafeez</u>." <u>George</u>,
43 A.D.3d at 562; <u>see, e.g.</u>, <u>People v. Swinton</u>, 7 N.Y.3d 776

_____

        [11]   <u>But see</u> <u>People v. James</u>, 839 N.Y.S.2d 435 (Sup. Ct.
2007) (concluding that under <u>Policano I</u>, cases on direct appeal
after the New York Court of Appeals began to change its
interpretation of depraved indifference murder statute but that
became final before <u>Feingold</u> would not benefit from the
retroactive application of <u>Feingold</u>); <u>accord</u> <u>People v. Gutierrez</u>,
836 N.Y.S.2d 488 (Sup. Ct. 2007).

(2006) (May 2003 conviction);[12] People v. Mancini, 7 N.Y.3d 767
(2006) (October 2002 conviction); People v. Atkinson, 7 N.Y.3d
765 (2006) (February 2002 conviction).  In fact, in Feingold
itself, the Court of Appeals applied its new interpretation of
the depraved indifference statute to the defendant when it ruled
in his favor on direct appeal, 7 N.Y.3d at 296-97, even though he
had been convicted in November 2004, see People v. Feingold, 22
A.D.3d 242 (1st Dep't 2005).

        Likewise, the Appellate Divisions have applied the
changes in the depraved indifference law to cases pending on
direct appeal even where the conviction pre-dated the changes.
See, e.g., George, 43 A.D.3d at 561 (January 2003 conviction);
People v. Dickerson, 42 A.D.3d 228, 238 (1st Dep't 2007) (August
2002 conviction); People v. Garrison, 39 A.D.3d 1138, 1139 (4th
Dep't 2007) (January 2003 conviction); People v. Ziminski, 34
A.D.3d 507, 508 (2d Dep't 2006) (November 1999 conviction).[13]

        Second, although the New York Court of Appeals has not
explicitly held that the changes in its depraved indifference law
apply to cases pending on direct appeal, it has implied as much.
In Policano I, it held that the changes in the law did not apply

---

        [12]    The dates of conviction for this decision and the
others that follow are drawn from the George decision.  43 A.D.3d
at 562.

        [13]    But see People v. Brown, 41 A.D.3d 261, 263 (1st
Dep't 2007) (where defendant was convicted of depraved
indifference murder in December 2003, applying, on direct appeal,
Register rather than post-2003 law because "[t]he change in the
law regarding depraved indifference murder cannot be
retroactively applied," citing Policano I).

retroactively to convictions that became final before the law
began to change.  See 7 N.Y.3d at 602-04; George, 43 A.D.3d at
561.  The Court's holding in Policano I has generated litigation
as to precisely when the law changed, for if a conviction became
final before the law changed, the change in the law was
inapplicable, as it was not to be applied retroactively.  See,
e.g., People v. Baptiste, 853 N.Y.S.2d 719, 722-28 (3d Dep't
2008) (concluding that change in law occurred with the Court's
decision in Payne, and holding that the new interpretation of
depraved indifference murder did not apply because defendant's
conviction became final six months before Payne was decided).
Obviously, there would have been no need for litigation to
determine precisely when the law changed if the new law were
inapplicable to cases pending on direct review.  See generally
Abraham Abramovsky & Jonathan I. Edelstein, In Search of the
Point of No Return:  Policano v. Herbert and the Retroactivity of
New York's Recent Depraved Indifference Murder Jurisprudence, 57
Syracuse L. Rev. 973, 979 (2007) ("Ordinarily, habeas petitions
must be decided according to the law as it existed at the time a
defendant's conviction becomes final, which is usually ninety
days after the conclusion of his direct appeals.").[14]

---

[14]    See also People v. Pasley, 2008 WL 2095792, at *1 (1st
Dep't 2008) (affirming conviction of depraved indifference murder
for the "unprovoked slashing with a box cutter at the victim's
jugular vein, with enough force to slice through two major
vessels"); Policano v. Herbert, 507 F.3d 111 (2d Cir. 2007)
("Policano II") (reversing  grant of habeas petition, following
New York State Court of Appeals's answers to certified questions,
on grounds that evidence established depraved indifference murder
under People v. Register, which was the law when defendant's

Third, United States Supreme Court case law also supports the conclusion that Fernandez was entitled to the benefit of the clarification in the law before his decision became final.  In <u>Bunkley v. Florida</u>, 538 U.S. 835 (2003), the defendant burglarized a closed restaurant, and upon his arrest, the police discovered a pocketknife with a blade about 3 inches long, folded and in his pocket.  He was charged with burglary in the first degree under Florida law, which carried a sentence of up to life imprisonment, on the theory that his pocketknife was a "dangerous weapon."  <u>Id.</u> at 836.  If the pocketknife were not a dangerous weapon, Bunkley would have been charged with burglary in the third degree, which carried a sentence of up to only five years imprisonment.  <u>Id.</u> at 837.  Bunkley was convicted of burglary in the first degree and was sentenced to life imprisonment.  <u>Id.</u>  In 1989, his conviction was affirmed by the Florida District Court of Appeals, Second District.  <u>Bunkley v. State</u>, 539 So. 2d 477 (Fla. Dist. Ct. App. 1989).

Eight years after Bunkley's conviction became final, the Florida Supreme Court held that a pocketknife with a blade of 3 3/4 inches was a "'common pocketknife'" and not a "'weapon.'" <u>L.B. v. State</u>, 700 So. 2d 370, 373 (Fla. 1997).  This was the first time the Florida Supreme Court had considered the "common pocketknife" exception.  <u>Bunkley</u>, 538 U.S. at 837.  Bunkley filed for postconviction relief, arguing that his pocketknife fell within the "common pocketknife" exception and that his conviction

_____

conviction became final, <u>i.e.</u>, March 30, 2001).

for burglary in the first degree was invalid.  <u>Id.</u> at 838.  After
the Florida lower courts denied Bunkley relief, the Florida
Supreme Court affirmed, holding that <u>L.B.</u> represented an
"evolutionary refinement" in the law that could not be applied
retroactively.  <u>Id.</u> (citing <u>Bunkley v. State</u>, 833 So. 2d 739, 744
(Fla. 2002)).  The Florida Supreme Court, however, characterized
its decision in <u>L.B.</u> as part of a "century-long evolutionary
process."  <u>Id.</u> at 841 (citing <u>Bunkley v. State</u>, 833 So. 2d at
745).

     The United States Supreme Court granted certiorari and
remanded the case for a determination of the state of the law on
the date Bunkley's conviction became final.  <u>Id.</u> at 842.  The
Court noted that the Florida Supreme Court had not clarified
where in the "century-long evolutionary process" the law was when
Bunkley's conviction became final in 1989.  <u>Id.</u> at 841-42.  The
Court held that if the law set forth in the <u>L.B.</u> decision in 1997
was the same as the law in effect when Bunkley's conviction
became final in 1989, then Bunkley was entitled to the benefit of
that law.  <u>Id.</u>  If the Florida Supreme Court's interpretation of
the law in <u>L.B.</u> was new and different from what the law was when
Bunkley's conviction became final, then <u>L.B.</u> would not apply to
his case, as his conviction had become final before <u>L.B.</u> was
decided.  <u>Id.</u>

     Here, there is no doubt as to the timing of the change
in the law.  There is no need, as there was in <u>Bunkley</u> and
<u>Policano</u>, to go back and determine the state of the law when

-40-

Fernandez's conviction became final, for his direct appeal had not been concluded -- and his conviction was not "final" -- when <u>Hafeez</u>, <u>Gonzalez</u>, <u>Payne</u>, <u>Suarez</u>, and <u>Feingold</u> were decided.

The conclusion that Fernandez is entitled to the benefit of the changes in the law that occurred before his conviction became final is also supported by the Supreme Court's decision in <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987).  Although the Court there addressed "new constitutional rules of criminal procedure," <u>id.</u> at 320, its reasoning applies here as well.  First, the Court held that "the retroactivity analysis for convictions that have become final must be different from the analysis for convictions that are not final at the time the new decision is issued."  <u>Id.</u> at 321-22.  Second, it reiterated that "'all defendants whose cases were still pending on direct appeal at the time of the law-changing decision should be entitled to invoke the new rule.'"  <u>Id.</u> at 322 (quoting <u>United States v. Johnson</u>, 457 U.S. 537, 545 & n.9 (1982)).  The Court explained that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication."  <u>Id.</u>  Third, it explained that

> the nature of judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for announcement of a new rule.  But after we have decided a new rule in the case selected, <u>the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review</u>.
>
> . . .

> [S]elective application of new rules
> violates the principle of treating similarly
> situated defendants the same. . . . [T]he
> problem with not applying new rules to cases
> pending on direct review is "the <u>actual
> inequity</u> that results when the Court chooses
> which of many similarly situated defendants
> should be the chance beneficiary" of a new
> rule.

<u>Id.</u> at 322-23 (emphasis in first paragraph added; quoting <u>United States v. Johnson</u>, 457 U.S. at 556 n.16).

Although this reasoning was expressed in the context of constitutional rules, it applies with equal force here. Fernandez was entitled to the benefit of the changes because his case was still pending when <u>Hafeez</u>, <u>Gonzalez</u>, <u>Payne</u>, <u>Suarez</u>, and finally <u>Feingold</u> were decided. The new rules have been applied to similarly situated defendants -- other individuals who had been convicted of depraved indifference murder prior to the new decisions, but whose direct appeals were still pending. There simply is no reason why the new law should not be applied to Fernandez as well. It was error for the New York courts not to apply the new law to the charges against Fernandez.

### 3. <u>The New Law Applied to Fernandez</u>

Under the new interpretation of the depraved indifference murder statute, it is clear that Fernandez's conviction for depraved indifference murder cannot be sustained.

First, the trial court relied on law that was overruled before Fernandez's conviction became final. In his instructions to the jury, the trial court relied on the definition of depraved indifference murder set forth in <u>Register</u> in charging the jury:

> In determining whether a person's conduct evinced a depraved indifference to human life, a jury would have to decide whether the circumstances surrounding his reckless conduct, when <u>objectively viewed</u>, made it so uncaring, so callous, so dangerous and so inhuman as to demonstrate an attitude of total and utter disregard for the life of the person endangered.

(Trial Tr. at 792a) (emphasis added).  This was wrong, because, as <u>Feingold</u> now holds, the jury should have considered Fernandez's mens rea rather than merely engaging in an objective assessment of his conduct and the surrounding circumstances. Moreover, in its written decision issued on March 25, 2004, the trial court focused on whether an "objective assessment" of the degree of risk and the circumstances surrounding the defendant's conduct demonstrated depraved indifference, explicitly relying on <u>Sanchez</u> and <u>Register</u>, both of which were overruled by <u>Feingold</u>.[15] The trial court also failed to cite <u>Hafeez</u> (although it had already been decided), and it did not have the benefit of the decisions in <u>Gonzalez</u>, <u>Payne</u>, or <u>Suarez</u> (which had not yet been decided).  (<u>See</u> Resp't Ex. 5 at 37).

Second, Fernandez also was not accorded the procedural rights that he should have had under the recent case law.  The "twin counts" of intentional murder and depraved indifference murder should not both have been submitted to the jury.  <u>Suarez</u>, 6 N.Y.3d at 215.  In fact, the Third Department has construed

---

[15]    When the trial court orally denied Fernandez's motion to set aside the verdict, it relied on <u>People v. Rios</u>, 230 A.D.2d 87, and <u>People v. Asaro</u>, 182 A.D.2d 823.  Both decisions relied on <u>Register</u>.  <u>Rios</u>, 230 A.D.2d at 91; <u>Asaro</u>, 182 A.D.2d at 824.

Suarez to hold that "it is now for the trial judge to determine whether the defendant's conduct is more consistent with depraved indifference murder or intentional murder, rather than leaving the question of the defendant's state of mind to the jury." People v. Baptiste, 853 N.Y.S.2d at 728 (citing Suarez, 6 N.Y.3d at 215. In other words, absent compelling circumstances, the trial court should submit only one of the two charges to the jury, and the trial court should decide which of the two -- intentional murder or depraved indifference murder -- is the more appropriate charge, based on the evidence, to submit to the jury. This analysis was not done here, and no exceptional circumstances existed that would have warranted submitting both counts to the jury.

Third, although the People argue that "[e]ven under Feingold there could be an affirmance in this case" because Fernandez was merely being "reckless in his actions" (5/22/08 Tr. at 21), it is clear that under the recent decisions Fernandez is not guilty of depraved indifference murder as a matter of law. In Hafeez, for example, two men attacked the victim, motivated by revenge, with one of them stabbing the victim with a knife. They then drove away, leaving the victim on the street. Observing that this was "a quintessentially intentional attack directed solely at the victim," the Court of Appeals held that the actions could not have constituted depraved indifference murder as a matter of law. 100 N.Y.2d at 258. The facts here are remarkably similar, as Fernandez and one of his cousins, motivated by

revenge, attacked Anthony Santiago, with Fernandez hitting him in the head with a flashlight.  Fernandez and his cousin then drove away, leaving Santiago in the street.  This was a "quintessentially intentional attack directed solely at the victim."  Fernandez acted intentionally to hurt (if not kill) Santiago; he was not acting with indifference, depravedly or otherwise.

The facts here are also similar to <u>Suarez</u>, where the defendant stabbed his girlfriend three times and fled without summoning assistance, leaving her to bleed to death.  The Court of Appeals held that this was not depraved indifference murder.  Fernandez hit Santiago with a flashlight four or five times and then fled, leaving Santiago behind.  The only difference between this case and <u>Suarez</u> is that there the defendant used a gun, while here Fernandez used a flashlight.  This is not a meaningful distinction.

In affirming Fernandez's conviction, the First Department gave this summary of the evidence:

> [Fernandez] walked over to an ongoing fight between the victim and the codefendant, beat the victim on the head with a club-like metal flashlight for at least 20 to 45 seconds, hit him with sufficient force to split open his head with one blow and crack his skull with another, and then left him alone, lying in the middle of oncoming traffic.

<u>People v. Fernandez</u>, 23 A.D.2d at 252.  There is no doubt that this was despicable conduct, but there is also no doubt that this was intentional conduct, directed at and intended to harm a single person.  The multiple blows to the head were not

significantly different, for these purposes, from the ten shots
into the victim in <u>Gonzalez</u>, which were not enough to convert an
intentional act into one of depraved indifference.  As in <u>Suarez</u>,
where the defendant left the victim to bleed to death,
Fernandez's failure to summon aid for Santiago likewise did not
transform the intentional act into one of depraved indifference.

   In light of <u>Hafeez</u>, <u>Gonzalez</u>, <u>Payne</u>, <u>Suarez</u>, and
<u>Feingold</u>, it is clear, as a matter of law, that Fernandez was not
guilty of depraved indifference murder.

**C.** **<u>Fernandez's Entitlement to Habeas Relief</u>**

   Finally, I turn to the question whether Fernandez is
entitled to federal habeas relief under the standards set forth
in the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA").

  **1.** **<u>Standard of Review</u>**

   Under AEDPA, a federal court's ability to review a
claim in a habeas petition is limited if the claim "was
adjudicated on the merits in State court proceedings."  28 U.S.C.
§ 2254(d).  If the claim was adjudicated on the merits in state
court, a federal court can grant habeas relief only if the state
court's decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States," or "was based on an
unreasonable determination of the facts in light of the evidence
presented."  <u>Id.</u>

The Second Circuit has held that there is no "adjudication on the merits" when the state court's "discussion of the merits was preceded by a contrary-to-fact construction: '_if_ the merits _were_ reached, the result _would be_ the same.'" Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (emphasis in original).  In Bell, the Second Circuit "decline[d] to read a contingent observation as an 'adjudication on the merits,'" and, accordingly, reviewed the petitioner's claim de novo.  Id.  On the other hand, the Second Circuit has also held that there _was_ an adjudication on the merits where the state court reviewed the merits after finding "petitioner's claim to be unpreserved, and in any event, without merit."  Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (emphasis added).

Here, the First Department did discuss the merits, to a degree, but only after writing:  "Defendant's [legal insufficiency] argument . . . is not preserved for appellate review.  Were we to review it, we would reject it."  Fernandez, 23 A.D.3d at 252 (emphasis added).  This language is much more akin to the "contingent observation" in Bell than it is to the language indicating an alternative ruling in Zarvela.  Indeed, the subjunctive language here is virtually identical to the subjunctive language in Bell.  Accordingly, I decline to read the language here as an "adjudication on the merits," and thus I conclude that Fernandez is entitled to de novo review.  See Bell, 500 F.3d at 155.  Whether Fernandez's claim is reviewed de novo or under the more stringent standards set forth in AEDPA, however, he is entitled to federal habeas relief.

-47-

## 2.  **Application**

It has long been established, by the United States Supreme Court, that:

> the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)).  Likewise, the Due Process Clause prohibits a state from "convict[ing] a person of a crime without proving the elements of that crime beyond a reasonable doubt."  Fiore v. United States, 531 U.S. 225, 229 (2001); accord Bunkley v. Florida, 538 U.S. at 840.

Here, Fernandez's rights under the Due Process Clause were violated because he was convicted of the crime of depraved indifference murder without proof beyond a reasonable doubt of a critical element:  depraved indifference to human life -- the mens rea necessary to support a depraved indifference murder conviction as clarified in Feingold.  As discussed above, under Hafeez, Gonzalez, Payne, Suarez, and Feingold, Fernandez's actions here were "quintessentially intentional" and "directed solely" at one victim.  They were not, as a matter of law, depraved within the meaning of the depraved indifference murder statute.

While Register was still the law when Fernandez was convicted, the law changed before his conviction became final.

-48-

Under Bunkley (as well as Fiore), he was entitled to the benefit of the changes in the law, and Feingold and the quartet of cases leading up to it should have been applied on his direct appeal. If they had been applied, his conviction for depraved indifference surely would have been set aside.

Considering these issues de novo, I conclude that the People's evidence adduced at trial was legally insufficient to sustain Fernandez's conviction for depraved indifference murder. His rights under the Due Process Clause were violated when he was convicted without proof beyond a reasonable doubt of all the elements of the crime, and again when the appellate courts failed to apply the law in effect, as reflected in Feingold and its progeny, before his conviction became final.

My conclusion is the same even under the deferential standard set forth in AEDPA. The state court's affirmance of Fernandez's conviction was contrary to the holdings of the United States Supreme Court at the time -- including Bunkley, Fiore, and Jackson. Instead of rejecting his direct appeal, denying his motion for reargument of his appeal, and denying his application for leave to appeal to the Court of Appeals, the state courts should have, in accordance with Bunkley and Fiore, applied Feingold and its progeny, all of which had been decided before Fernandez's conviction became final.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is granted to the extent that the depraved

-49-

indifference murder conviction is vacated, and the case is
remanded to the state courts for further proceedings not
inconsistent with this decision.  The Clerk of the Court shall
enter judgment accordingly.

          SO ORDERED.

Dated:    New York, New York
          June 5, 2008

                              DENNY CHIN
                              United States District Judge